15-cv-06829 (LAK)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

*In re LEHMAN BROTHERS INC.*,

*Debtor.*

MADELYN ANTONCIC,

*Claimant-Appellant*,

- against -

JAMES W. GIDDENS, as Trustee for the
SIPA Liquidation of Lehman Brothers Inc.,

*Appellee.*

ON APPEAL FROM THE SIPA LIQUIDATION PROCEEDING
IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
No. 08-1420 (SCC)

## UPDATED BRIEF FOR THE APPELLEE TRUSTEE

HUGHES HUBBARD & REED LLP
James B. Kobak, Jr.
Meaghan C. Gragg
Karen M. Chau
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Attorneys for Appellee James W. Giddens
Trustee for the SIPA Liquidation of Lehman
Brothers Inc.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................1

JURISDICTIONAL STATEMENT ...........................................................................3

COUNTER STATEMENT OF ISSUES PRESENTED..............................................3

STANDARD OF REVIEW ........................................................................................3

COUNTER STATEMENT OF THE CASE................................................................4

    Background ....................................................................................................4

    Dr. Antoncic's Discretionary Bonus Claim .................................................7

    The Trustee's Objection, Appellant's Cross Motion to Amend, and the
    Bankruptcy Court's Decision.......................................................................10

THE BANKRUPTCY COURT'S ORDER SHOULD BE AFFIRMED ....................12

    I.    The $3.8 Million Discretionary Bonus Claim is Barred as a Matter of Law.........12

        A.    Lehman's Bonus Policy Bars Dr. Antoncic's Claim for a $3.8
            Million Bonus Premised on an Alleged Oral Promise..............................13

        B.    The Bankruptcy Court's Consideration of Lehman's Bonus Policy
            is Not Reversible Error. .......................................................................18

    II.    The Bankruptcy Court Did Not Abuse Its Discretion In Denying Appellant
          Leave to Amend Her Claim More than Six Years After the Bar Date .................19

CONCLUSION.........................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="letter-spacing:1px">CASES</span>

*In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 WL 601452 (Bankr. S.D.N.Y. Feb. 20, 2007) ...................................................................12

*Aristeia Capital, L.L.C. v. Calpine Corp. (In re Calpine Corp.)*, No. 07 Civ. 8493 (JGK), 2007 WL 4326738 (S.D.N.Y. Nov. 21, 2007) ...................................................20, 21

*Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322 (S.D.N.Y. 2011), *aff'd*, 766 F.3d 163 (2d Cir. 2014) ...........................................................13, 16

*Cancro v. Credit Agricole Indosuez Severance Pay Program*, No. 05 Civ. 2023 (RJS), 2009 WL 8573475 (S.D.N.Y. Apr. 15, 2009) ...............................................15

*Coreth v. Barclays Capital Inc. (In re Lehman Bros. Holdings)*, 479 B.R. 268 (S.D.N.Y. 2012), *aff'd*, 513 F. App'x 75 (2d Cir. 2013) .................................................22

*Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498 (S.D.N.Y. 2012) ...............................13

*Dixon v. Golden-Masano-Bradley Law Firm*, No. 06-3977, 228 Fed. App'x. 142 (3rd Cir. Mar. 28, 2007) ........................................................................19

*Ferrand v. Credit Lyonnais*, No. 02 Civ. 5191 (VM), 2003 WL 22251313 (S.D.N.Y. Sept. 30, 2003), *aff'd*, 110 F. App'x 160 (2d Cir. 2004) .............................15, 17

*Gallagher v. Ashland Oil*, 183 A.D.2d 1033 (N.Y. App. Div. 1992) ..................................16

*Giuntoli v. Garvin Guybutler Corp.*, 726 F. Supp. 494 (S.D.N.Y. 1989) ..........................16, 23

*In re Hemingway Transport, Inc.*, 954 F.2d 1 (1st Cir. 1992) ..........................................20

*Hunter v. Deutsche Bank AG, N.Y. Branch*, 866 N.Y.S.2d 670 (1st Dep't 2008) ................22

*In re Tri-State Homes, Inc.*, 56 B.R. 24 (W.D. Wisc. 1985) ............................................21

*In re Integrated Resources, Inc.*, 157 B.R. 66 (S.D.N.Y. 1993) ..............................4, 19, 22

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) ..............................................3

*John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 106 F. Supp. 2d 462 (S.D.N.Y. 2000) ....................................................................18

*Kaplan v. Capital Co. of Am. LLC*, 747 N.Y.S.2d 504 (1st Dep't 2002) ................13, 15, 16, 17

*Kodsy v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11 Civ. 4180 (NRB), 2012 WL 124581 (S.D.N.Y. Jan. 17, 2012) ........................................12

*In re Lehman Bros. Inc.*, 493 B.R. 437 (Bankr. S.D.N.Y. 2013) ..................................................5

*Lobosco v. N.Y. Tel. Co./NYNEX*, 96 N.Y.2d 312 (2001) ............................................................16

*In re McLean Indus., Inc.*, 121 B.R. 704 (Bankr. S.D.N.Y. 1990) ...............................................20

*Meadows v. AMR Corp.*, No. 14 Civ. 8708 (PAC), 2015 WL 5893734 (S.D.N.Y. Oct. 8, 2015) ......................................................................................................................................21, 22

*In re MF Global Inc.*, 11-2790 (MG) SIPA, 2014 WL 657321 (Bankr. S.D.N.Y. Feb. 20, 2014) ..............................................................................................................................................5

*Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115 (2d Cir. 2005) .........................................................................................................................20

*In re Oneida Ltd.*, 400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd sub nom*, *Peter J. Solomon Co., L.P.*, No.09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) ......................12

*Ryan v. Kellogg Partners Inst. Servs.*, 19 N.Y.3d 1 (2012) ..........................................................16

*Smith v. New York State Elec. & Gas Corp.*, 155 A.D.2d 850 (N.Y. App. Div. 1989) ................17

## STATUTES AND RULES

11 U.S.C. § 502(a) .........................................................................................................................12

15 U.S.C. § 78aaa *et seq.* ...................................................................................................... *passim*

28 U.S.C. § 158(a) ...........................................................................................................................3

Fed. R. Bankr. 7012(b) .................................................................................................................12

Fed. R. Civ. P. 12(b) ....................................................................................................................12

N.Y. Labor Law § 193 ..................................................................................................................22

N.Y. Labor Law § 198 ..................................................................................................................22

Appellee James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. §§ 78aaa *et seq*., submits this brief in opposition to the appeal filed by claimant Dr. Madelyn Antoncic (the "Appellant" or "Dr. Antoncic"), from the Supplemental Order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") granting the Trustee's Two Hundred Sixty-Seventh Omnibus Objection to General Creditor Claims (Employee Claims) issued on July 15, 2015 (the "Order," TA 1525-29),[1] in the case captioned *In re Lehman Bros. Inc.*, No. 08-01420 (SCC) (SIPA) (the "SIPA Proceeding").

## PRELIMINARY STATEMENT

Appellant challenges the Bankruptcy Court's order (i) disallowing and expunging her claim for a $3.8 million bonus for the year 2008 (the "Discretionary Bonus Claim") premised on an alleged oral promise because it is barred by Lehman's clear written policy providing that bonuses are not guaranteed unless otherwise agreed upon in writing and (ii) denying Appellant leave to amend her claim nearly six years after the June 1, 2009, bar date in the SIPA Proceeding (the "Bar Date") to add a new claim for attorneys' fees in an undisclosed amount (the "Attorneys' Fees Claim") under New York's Labor Law.  The appeal lacks merit.

The Bankruptcy Court correctly held that Appellant's Discretionary Bonus Claim is insufficient under the standard applicable to a motion to dismiss for failure to state a claim. Appellant received actual notice that payment of bonuses was subject to Lehman's bonus policy

---

1.  Items designated as the record on appeal by Appellant are cited herein as "TA __," and refer to the Trustee's Supplemental Appendix, filed in connection with this brief.  Bankr. ECF references refer to the docket for *In re Lehman Bros. Inc.*, No. 08-01420 (SCC) (SIPA), pending in the Bankruptcy Court, unless otherwise noted.  The SIPA Proceeding is separate and distinct from the Chapter 11 proceedings of Lehman Brothers Holdings Inc., and we respectfully request that the caption for this appeal be corrected accordingly.

providing that bonuses are not guaranteed unless otherwise agreed upon in writing.  New York courts have repeatedly held that a written policy clearly stating that bonus compensation is discretionary bars breach of contract claims based on oral bonus promises.  Likewise, Appellant cannot maintain a plausible claim under quasi-contractual theories where she had actual notice of the policy.

Appellant's principal argument on appeal is a limited and technical one that she did not raise below:  that the Bankruptcy Court should not have considered the Guide to Working at Lehman Brothers (the "Guide"), which sets forth Lehman's bonus policy, because of an alleged lack of foundation.  The form and content of the Guide, taken together with other circumstantial evidence, provide sufficient indication that the Guide is reliable to establish its authenticity.  Appellant has not come forward with anything to suggest that it is unauthentic or irrelevant, besides her bare allegation.  Moreover, this argument was not raised in Appellant's response to the Trustee's Objection—she only mentioned it for the first time during oral argument at the sufficiency hearing before the Bankruptcy Court.  By a declaration, such as that of Michael J. McCabe attached hereto as Exhibit A, the Trustee could easily have addressed this argument if necessary if it were raised in a timely and appropriate manner.

To the extent Appellant suggests that the Bankruptcy Court should have converted the Trustee's Objection into a motion for summary judgment, any such error is harmless.  Appellant has not raised any genuine issue related to the Guide or her notice of the company's bonus policy that could be supplemented by discovery.

As to Appellant's Attorneys' Fees Claim, the Bankruptcy Court was well within its discretion to deny Appellant leave to amend her Claim.  Appellant first sought to assert her new Attorneys' Fees Claim nearly six years after the mandatory Bar Date and approximately six

months after the Bankruptcy Court's orders capping Appellant's Claim and barring further amendments increasing the capped amounts.

The Bankruptcy Court agreed with the Trustee that: (i) Appellant's claim for a $3.8 million bonus premised on an alleged oral promise must be disallowed because it is barred by Lehman's clear written policy providing that bonuses are not guaranteed unless otherwise agreed upon in writing; and (ii) Appellant should not be permitted to amend her claim to assert her new Attorneys' Fees Claim in an undisclosed amount nearly six years after the Bar Date and approximately six months after the Court's orders capping Appellant's Claim and barring further amendments increasing the capped amounts. The Trustee now asks this Court to affirm the Bankruptcy Court's decision.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a).

## COUNTER STATEMENT OF ISSUES PRESENTED

1.      Whether the Bankruptcy Court erred in granting the Trustee's Objection and ordering the disallowance and expungement of Dr. Antoncic's $3.8 million Discretionary Bonus Claim.

2.      Whether the Bankruptcy Court abused its discretion in denying Appellant's cross-motion for leave to amend the Claim and assert her new Attorneys' Fees Claim nearly six years after the Bar Date and approximately six months after the Court's orders capping Appellant's Claim and barring further amendments increasing the capped amounts.

## STANDARD OF REVIEW

The Bankruptcy Court's conclusions of law are reviewed *de novo* and its findings of fact are reviewed for clear error. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988-89 (2d Cir. 1990).

The decision to grant or deny an amendment to a timely filed proof of claim rests within the sound discretion of the Bankruptcy Court, and the Bankruptcy Court's denial of a request to amend a claim is reviewed by the District Court for abuse of discretion.  *See In re Integrated Resources, Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993).

## COUNTER STATEMENT OF THE CASE

This is an appeal from the Bankruptcy Court's Order Granting the Trustee's Objection (Order, TA 1525-29), as determined after hearing oral argument on June 29, 2015 (the "Hearing," TA 1454-1524).

**Background**

The liquidation of LBI was commenced pursuant to the provisions of SIPA, which provides for mandatory removal to, and correspondingly broad jurisdiction of, the Bankruptcy Court.  *See* 15 U.S.C. § 78eee(b)(4).  On September 19, 2008, the Honorable Gerard E. Lynch, United States District Court, Southern District of New York, entered an order commencing liquidation in the case captioned *Securities Investor Protection Corp. v. Lehman Brothers Inc.*, No. 08-CIV-8119 (GEL) (S.D.N.Y. Sept. 19, 2008) (the "LBI Liquidation Order," TA 1-11).  The LBI Liquidation Order, *inter alia*, (i) appointed the Trustee for the liquidation of the business of LBI pursuant to section 78eee(b)(3) of SIPA and (ii) removed the case to the Bankruptcy Court for the Southern District of New York for all purposes as required for SIPA cases by section 78eee(b)(4) of SIPA, in the case captioned *In re Lehman Brothers Inc.*, Case No. 08-01420 (JMP).  Pursuant to the LBI Liquidation Order and SIPA, the Bankruptcy Court has been administering the SIPA Proceeding for over seven years.

Pursuant to SIPA section 78fff-2(a) and the Bankruptcy Court's November 7, 2008 Order Approving Form and Manner of Publication and Mailing of Notice of

Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication

of Claims; Fixing a Meeting of Customers and Other Creditors; and Fixing Interim Reporting

Pursuant to SIPA, all general creditor claims must have been received by the Trustee by June 1,

2009 and no claims of any kind will be allowed unless received by the Trustee on or before June

1, 2009.  (TA 12-16.)  The bar date in a SIPA proceeding is mandatory and strictly construed.

*See In re MF Global Inc.*, 11-2790 (MG) SIPA, 2014 WL 657321, at *3 (Bankr. S.D.N.Y. Feb.

20, 2014) ("SIPA mandates that all claims be filed in a timely manner to ensure that securities

investment liquidations produce speedy and orderly returns for creditors."); *In re Lehman Bros.*

*Inc.*, 493 B.R. 437, 444 (Bankr. S.D.N.Y. 2013) ("The statutory time limitations for filing a

claim in a SIPA case are clearly delineated and do not allow the Court to fashion judicial

exceptions to such filing deadlines."); *see also* 15 U.S.C. § 78fff-2(a)(3) (providing the *only*

exception to a SIPA bar date: that a reasonable, fixed extension of time may be granted to

governmental entities, infants or incompetent persons without guardians, but only if application

for an extension is made before the bar date, and only for cause).

On or around January 29, 2009, Dr. Antoncic filed two claims: (i) a customer

claim (No. 800002147) in the amount of $9,936,931.00; and (ii) a general creditor claim (No.

7000706) in the amount of $13,736,931.00.  The general creditor claim (No. 7000706) as filed

asserted employee priority status and had two components:  (i) a claim for a discretionary bonus

based on a purported oral promise in the amount of $3,800,000.00 and (ii) a claim for restricted

stock units in the amount of $9,936,931.00.[2]  (*See* Two Hundred Sixty-Seventh Omnibus

---

2.  The Trustee determined that the customer claim (No. 800002147) was not entitled to customer status and
reclassified it to a general creditor claim.  (*See* Declaration of Dr. Madelyn Antoncic in Opposition to Trustee's
267th Omnibus Objection to General Creditor Claims (Employee Claims) and In Support of Cross-Motion for
Leave to Amend Claim (the "<u>Antoncic Declaration</u>"), Ex. D, TA 1358-62.)  The Trustee then objected to the
general creditor claim (No. 7000706) as part of the Trustee's eighty-ninth omnibus objection to general creditor

Objection to General Creditor Claims (Employee Claims) (the "267th Objection"), Ex. E, TA 1114-18.)

On May 8, 2014, the Trustee filed the Motion for an Order Pursuant to Sections 105(a), 502(a), 502(c) and 726 of the Bankruptcy Code and Bankruptcy Rule 3009 (I) Establishing a Final Reserve for Secured, Administrative and Priority Claims, (II) Allowing Certain Secured, Administrative and Priority Claims, (III) Authorizing the Trustee to Satisfy Allowed Secured, Administrative and Priority Claims, and Related Relief (the "Secured and Priority Claims Reserve Motion," TA 59-303) and on July 2, 2014, the Bankruptcy Court entered an order approving the Secured and Priority Claims Reserve Motion (the "Secured and Priority Claims Reserve Order, TA 661-716).  Pursuant to the Secured and Priority Claims Reserve Order, the Trustee established a Secured and Priority Claims Reserve of $612 million, of which approximately $242 million was for Allowed Secured and Priority Claims, each of the unresolved Secured and Priority Claims was capped in the amounts provided in the schedules attached to the Secured and Priority Claims Reserve Order, and further amendments to the Claims increasing the capped amounts were barred.  The portions of the Claim for which Dr. Antoncic asserted administrative and priority status were capped in the amounts of $81,386.27

---

claims (the "89th Objection," Bankr. ECF No. 6570) on the basis that the claim did not have sufficient supporting documentation.  In response, Dr. Antoncic submitted a statement to the Trustee on or around August 13, 2013 (the "Antoncic Statement").  (Antoncic Decl., Ex. G, TA 1371-1407.)  By the Antoncic Statement, Dr. Antoncic sought to amend the Discretionary Bonus Claim up to $3,807,143.00 and sought to add, for the first time, claims for indemnification and benefits, thereby increasing the total claimed amount to $13,850,461.27.  Without taking any position as to the post-Bar Date purported claim amendments, the Trustee determined that the additional information submitted by Dr. Antoncic was sufficient to enable the Trustee to assess the validity of Dr. Antoncic's Claim and, therefore, on August 15, 2013, withdrew the 89th Objection as it related to Dr. Antoncic's general creditor claim (No. 7000706), without prejudice to the Trustee's right to object to the Claim on any grounds in the future. (*See* Notice of Withdrawal of Trustee's Eighty-Ninth Omnibus Objection to General Creditor Claims (Insufficient Documentation Claims) Solely as to Certain Claims, Bankr. ECF No. 7033.).  On May 30, 2014, the Trustee entered into a stipulation with Dr. Antoncic whereby all information and documentation originally included or asserted in the reclassified customer claim (No. 800002147) was merged into the general creditor claim (No. 7000706), without prejudice to the Trustee's right to object to the general creditor claim (No. 7000706) on any basis, and the reclassified customer claim (No. 800002147) was withdrawn.  (*See* Antoncic Decl., Ex. E, TA 1363-65.)

and $10,950.00, respectively, and further amendments increasing those amount were barred. The Trustee began making distributions to allowed secured, administrative, and priority claims pursuant to the Secured and Priority Claims Reserve Order on July 17, 2014.

On June 26, 2014, the Trustee filed the Motion for an Order Pursuant to Sections 105(a), 502(a), 502(c) and 726 of the Bankruptcy Code and Bankruptcy Rule 2009 (I) Capping the Maximum Allowable Amounts, and Establishing an Interim Distribution Fund, for Unsecured Claims, (II) Allowing Certain Unsecured Claims, (III) Authorizing the Trustee to Make a First Interim Distribution to Allowed Unsecured Creditors with a Record Date of July 15, 2014, and Related Relief (the "Unsecured Claims Reserve Motion," TA 304-660), and on July 30, 2014, the Court entered an order approving the Unsecured Claims Reserve Motion (the "Unsecured Claims Reserve Order," TA 717-983).  Pursuant to the Unsecured Claims Reserve Order, the Trustee established an Interim Distribution Fund of $4.6 billion and commenced a first interim distribution to the holders of allowed unsecured claims on September 10, 2014, and is maintaining pro rata reserves for unresolved claims.  In addition, the Unsecured Claims Reserve Order capped the maximum potentially allowable unsecured amounts of the unresolved claims, and barred further amendments increasing such amounts.  The Unsecured Claims Reserve Order capped Dr. Antoncic's general unsecured claim at $13,850,461.27 and barred further amendments increasing this amount.  The Trustee has made three interim distributions to the holders of allowed general unsecured claims to date.

**Dr. Antoncic's Discretionary Bonus Claim**

Dr. Antoncic asserts a claim in the amount of $3,807,143.00 for bonus compensation for the year 2008 premised on an alleged oral promise.  According to Dr. Antoncic, in September 2007, she was asked to leave her position as Lehman's Global Head of

Risk Policy and to take a "newly created position focusing on external regulatory and policy issues."  (*See* Antoncic Decl., TA 1305.)  Joseph Gregory, the President and COO of LBI's parent company, Lehman Brothers Holdings Inc. ("LBHI"), allegedly promised to pay Dr. Antoncic the same amount of bonus compensation in her new position in 2008 as she received in 2007.  (*Id*., TA 1305-06.)

According to Dr. Antoncic's 2007 Total Compensation Statement, which is dated December 11, 2007, her total compensation in 2007 was $3,300,000 and her "Total Compensation Value" was $4,007,143.  (*See* Antoncic Decl., Ex. B, TA 1316.)  The 2007 Total Compensation Statement states:  "***Your rights to the bonus payment and equity awards are subject to the terms and conditions of the Firm's bonus policy*** and the controlling equity award documents, as applicable."  (*Id*. (emphasis added).)

Lehman's bonus policy is clearly set forth in Lehman's employee Guide, which was available electronically on the Firm's "LehmanLive" system and which "outlin[ed] Lehman Brothers' policies and procedures."  (267th Objection, TA 1004; Ex. C, TA 1026 ("The Guide to Working at Lehman Brothers is . . . available electronically on LehmanLive, keyword: Guide.").)  The Guide provides, in the section entitled "Bonuses," that "***[b]onuses are not guaranteed unless otherwise agreed upon in writing, and are determined at the full discretion of senior Firm management***," and provides further governing guidelines for the payment of bonuses, including that "[b]onuses are contingent upon the approval of the final bonus pool by the Compensation and Benefits Committee of the Board of Directors of Lehman Brothers Holdings Inc."  (267th  Objection, Ex. C, TA 1032.)

Appellant relies on emails she annexed to her Claim from a time period surrounding Lehman's demise.  LBI's parent was placed in liquidation after weeks of well-

publicized efforts to save it in mid-September 2008.  In late July 2008—almost a year after her alleged September 2007 conversation with Joseph Gregory, and well after Dr. Antoncic received the 2007 Total Compensation Statement which provided actual notice that the payment of bonuses was subject to the terms and conditions of Lehman's bonus policy—Dr. Antoncic contacted Thomas A. Russo, Vice Chairman and General Counsel of Lehman, via email.  In her July 23, 2008 email to Mr. Russo, Dr. Antoncic wrote:  "When I spoke with [Joseph Gregory] about the matter we discussed yesterday, I had thought about suggesting we put something in writing in case he got hit by the proverbial bus.  But then I decided not ask [sic] for that knowing that in our business your word is your bond and more importantly, that's not how we do things here at Leh.  Let me know if you need me to reach out to Joe to discuss this."  (Antoncic Decl., Ex. B, TA 1317 (Correspondence 1).)  Mr. Russo responded, merely:  "Call Joe to talk with him re his view."  (*Id.* (Correspondence 2).)  Dr. Antoncic replied:  "I am a little confused about what that means.  You said you were going to talk to Joe.  I was only suggesting I would be happy to speak with him after you do to refresh his memory of the conversation, only if necessary."  (*Id.*, TA 1318 (Correspondence 3).)  To which Mr. Russo replied:  "My original thought was that I was going to talk to Joe about it, but upon reflection, I think it would be better for you to talk with him since the entire database is a conversation between the two of you.  Since that was the case, I have very little to add at this time.  After you have spoken with him, I will have a conversation with him, but I wanted him to have a 'full deck of cards' before I did so."  (*Id.*, TA 1319 (Correspondence 4).)  Dr. Antoncic subsequently wrote to Joseph Gregory on July 24, 2008:  "I need to talk to you at [Thomas Russo's] suggestion.  Please give me a ring.  I know Joanne gave you the message but Tom suggested that I write an email to you as well."  (*Id.*, TA

9

1320 (Correspondence 5).)  Dr. Antoncic did not submit any response to her July 24, 2008 email to Joseph Gregory, and she has not suggested that she has ever received one.

On September 29, 2008, after the commencement of the SIPA Proceeding, Dr. Antoncic again wrote to Thomas Russo seeking guidance on how she should handle her claim for the bonus premised on Joseph Gregory's alleged oral promise.  (*Id*., TA 1320 (Correspondence 6).)  Mr. Russo responded:  "I don't know if you ever spoke to Joe about it, but I did suggest that the two of you talk since whatever was discussed was between the two of you." (*Id*., TA 1321 (Correspondence 7).)

Dr. Antoncic has not submitted any email or writing from Joseph Gregory, who purportedly made the promise, nor has Dr. Antoncic suggested that any such writing exists.  The emails from Thomas Russo on which she relies do not confirm the existence of an agreement— to the contrary, Mr. Russo stated that he had no knowledge of the matter.  Moreover, Mr. Russo did not ratify Dr. Antoncic's subjective belief that "in our business your word is your bond and more importantly, that's not how we do things here at Leh"—to the contrary, Mr. Russo urged Dr. Antoncic to speak with Joseph Gregory.  Appellant adduced no other evidence of an agreement about a bonus, let alone one in writing.

**The Trustee's Objection, Appellant's Cross Motion to Amend, and the Bankruptcy Court's Decision**

On October 7, 2014, the Trustee filed his Two Hundred Sixty-Seventh Omnibus Objection to General Creditor Claims (Employee Claims) (267th Objection, TA 984-1287.) seeking, *inter alia*, to disallow and expunge Dr. Antoncic's claims for bonus compensation, indemnification, and benefits, and to subordinate below the level of general creditor claims or reclassify as equity Dr. Antoncic's claim for equity awards.  The Trustee attached as Exhibit C to the 267th Objection a copy of the Guide, which contains Lehman's bonus policy.  (TA 1026-68.)

10

On January 5, 2015, Dr. Antoncic filed a response (the "Antoncic Response," TA 1288-1303) in opposition to the 267th Objection and cross-motion for leave to amend, asserting, for the first time, the new Attorneys' Fees Claim in an undisclosed amount under New York Labor Law.  Dr. Antoncic did not raise an argument about lack of foundation for the Guide or its authenticity in her Response.  The Trustee filed his reply and opposition to Dr. Antoncic's cross-motion on June 2, 2015 (the "Reply," TA 1434-53).

The Bankruptcy Court heard oral argument on June 29, 2015, at the end of which the Bankruptcy Court held that the 267th Objection would be granted.  (Hearing Tr., TA 1454-1524.)  The Bankruptcy Court entered an Order implementing its decision granting the Trustee's 267th Objection on July 15, 2015.  (Order, TA 1525-29.)

On July 29, 2015, Dr. Antoncic filed a Notice of Appeal (the "Notice of Appeal," TA 1530-31).  While Dr. Antoncic's Notice of Appeal appears to cover the Bankruptcy Court's entire Order, as to all aspects of Dr. Antoncic's Claim, Dr. Antoncic's Brief for Claimant-Appellant appears to pursue an appeal only as to the $3.8 million Discretionary Bonus Claim and the Attorneys' Fees Claim based on New York Labor Law in an undisclosed amount. (Brief for Claimant-Appellant, ECF No. 9 ("Appellant's Brief") at 1 & n.1.)  Appellant's Brief does not address the claim for amounts related to Restricted Stock Units which had been granted to Dr. Antoncic prior to the Filing Date but had not yet been converted to LBHI stock (the "Equity Awards Claim") in the amount of $9,936,932.00; nor does she address the claim for indemnification compensation for attorneys' fees and expenses (the "Indemnification Claim") in the amount of $81,386.27, or the claim for amounts she asserts she paid for healthcare but for which she was not reimbursed by the manager of the LBHI Group Benefits Plan (the "Benefits

Claim") in the amount of $25,000.00.   Therefore the Equity Awards Claim, the Indemnification

Claim, and the Benefits Claim are waived and not further addressed.

### THE BANKRUPTCY COURT'S ORDER SHOULD BE AFFIRMED

I.  **The $3.8 Million Discretionary Bonus Claim is Barred as a Matter of Law**

A filed proof of claim is "deemed allowed, unless a party in interest . . . objects."

11 U.S.C. § 502(a).   "Providing *prima facie* evidence of the validity and amount of a claim, the

proof of claim places the initial burden of persuasion on any objector."   *Kodsy v. Motors*

*Liquidation Co. (In re Motors Liquidation Co.)*, No. 11 Civ. 4180 (NRB), 2012 WL 124581, at

*3 (S.D.N.Y. Jan. 17, 2012) (citing *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y.

2009), *aff'd sub nom*, *Peter J. Solomon Co., L.P.*, No.09 Civ. 2229 (DC), 2010 WL 234827

(S.D.N.Y. Jan. 22, 2010)).   "The burden then shifts to the claimant if the objector produces

evidence equal in force to the prima facie case which, if believed, would refute at least one of the

allegations that is essential to the claim's legal sufficiency."   *Id*. (quoting *In re Oneida Ltd.*, 400

B.R. at 389) (internal quotation marks omitted).   "In this event the claimant must prove by a

preponderance of the evidence that the claim should be allowed as filed."   *Id*. (citing *In re*

*Oneida Ltd.*, 400 B.R. at 389; *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 WL

601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007)).

Pursuant to the Bankruptcy Court's September 26, 2013 Order Establishing

Claims Hearing Procedures and Alternative Dispute Resolutions Procedures for General Creditor

Claims (the "Claims Procedures Order," TA 24-58), the Hearing was a "Sufficiency Hearing" to

determine the legal sufficiency of the Claim under Bankruptcy Rule 7012.  Under Bankruptcy

Rule 7012, the standards in Federal Rule of Civil Procedure 12(b) apply.  Fed. R. Bankr.

7012(b).

A.    **Lehman's Bonus Policy Bars Dr. Antoncic's Claim for a $3.8 Million Bonus Premised on an Alleged Oral Promise**

The Trustee has refuted an essential allegation in Dr. Antoncic's Claim. Lehman's written policy, contained in its employee handbook, providing that "***[b]onuses are not guaranteed unless otherwise agreed upon in writing, and are determined at the full discretion of senior Firm management***" (267th Objection, TA 1004; Ex. C, TA 1032 (emphasis added)) bars a breach of contract claim based on an oral promise to pay a bonus.  Likewise, to the extent Dr. Antoncic seeks to recover under quasi-contractual theories, such theories are not viable under the circumstances of this case.

"[C]ourts have repeatedly held that 'a written policy clearly stating that bonus compensation is discretionary bars breach of contract claims based on oral bonus promises.'" *Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 517 (S.D.N.Y. 2012) (quoting *Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 333 (S.D.N.Y. 2011)), *aff'd*, 766 F.3d 163 (2d Cir. 2014) (recognizing that "[i]t is axiomatic that a promise to pay incentive compensation is unenforceable if the written terms of the compensation plan make clear that the employer has absolute discretion in deciding whether to pay the incentive," and finding that even if the company's statements to the plaintiff could be construed as implicitly assuring him a bonus, "any such promise [was] inconsistent with [the company's] written Incentive Plan for 2010, which squarely provided that bonuses were to be paid out entirely at the discretion of management"); *see also Kaplan v. Capital Co. of Am. LLC*, 747 N.Y.S.2d 504, 505-06 (1st Dep't 2002) ("Given the clearly expressed policy of the company that bonuses were to be paid solely at the company's discretion, and the provision requiring a writing . . . plaintiff has no sustainable claim that defendant company entered into an enforceable agreement entitling him to bonus compensation. It is plain, in light of the company handbook, that the company officers with whom plaintiff dealt

13

were without actual or apparent authority to bind the company to pay a bonus and that the

company had no intention of incurring such an obligation by means of an oral agreement . . . .").

        Claimant's 2007 Total Compensation Statement, dated December 11, 2007, which

she submitted in support of her Claim, explicitly provides: "Your rights to the bonus payment

and equity awards ***are subject to the terms and conditions of the Firm's bonus policy*** . . . ."

(*See* Antoncic Decl., Ex. B, TA 1316 (emphasis added).)  Thus, Claimant cannot dispute that

before the commencement of the year for which she alleges the purported bonus was to be made,

she was on actual notice that Lehman had a written bonus policy, and that her right to a bonus

payment was subject to the terms and conditions of that policy.[3]

        The series of emails that Appellant has submitted, between her and Thomas

Russo, Vice Chairman and General Counsel of Lehman—which began months after Dr.

Antoncic alleges that Joseph Gregory, the President and COO of Lehman, made the purported

oral promise that she would be paid a bonus for 2008, and after she received the 2007

Compensation Statement referencing the Firm's bonus policy—are insufficient to establish an

enforceable obligation on the part of LBI to pay Dr. Antoncic the bonus she seeks.  There is no

email or writing from Joseph Gregory, who purportedly made the promise.  Nor do the emails

from Thomas Russo confirm the existence of an agreement—to the contrary, Mr. Russo stated

that he had no knowledge on the matter:  "I think it would be better for you to talk with [Joseph

Gregory] since the entire database is a conversation between the two of you.  Since that was the

case, I have very little to add at this time."  (Antoncic Decl., Ex. B,  TA 1319 (Correspondence

---

3.    In her Brief, Dr. Antoncic attempts to overcome this fact by arguing that the Firm's bonus policy only "required
that employees be actively employed year-end in order to receive their payment."  (Appellant's Br. at 4-5.)
This selective quotation of the policy, which also clearly states, among other things, that "***[b]onuses are not
guaranteed unless otherwise agreed upon in writing, and are determined at the full discretion of senior Firm
management,***" is unavailing.   (267th Objection, TA 1004; Ex. C, TA 1032 (emphasis added).)

4) (email dated July 23, 2008); *see also id.*, TA 1321 (Correspondence 7) (email dated September 30, 2008) ("I don't know if you ever spoke to Joe about it, but I did suggest that the two of you talk since whatever was discussed was between the two of you.").)  Nothing within the emails submitted by Appellant ratifies her claim to an oral bonus promise, and contrary to the characterization of the emails in the Appellant's Brief, there is no "implicit acknowledgment" by Mr. Russo that he was unaware of Lehman's bonus policy within these email exchanges. (Appellant's Br. at 15.)

Given the clearly expressed policy that bonuses are not guaranteed unless otherwise agreed upon in writing, there is no enforceable agreement entitling Dr. Antoncic to bonus compensation for 2008.  *See Kaplan*, 747 N.Y.S.2d at 505-06.

Furthermore, to the extent Appellant seeks to recover under quasi-contractual theories, such theories are not viable in light of the availability of the bonus policy on the LehmanLive system and the 2007 Total Compensation Statement which shows that before the commencement of the year for which she alleges the purported bonus was to be made, Dr. Antoncic received actual notice that Lehman had a bonus policy, and that her right to bonus payment was subject to the terms and conditions of that policy.  *See, e.g.*, *Cancro v. Credit Agricole Indosuez Severance Pay Program*, No. 05 Civ. 2023 (RJS), 2009 WL 8573475, at *7-9 (S.D.N.Y. Apr. 15, 2009) (finding that an employee who claimed he was orally assured of a certain bonus level could not sustain a quasi-contract claim for that bonus where the employer's handbook provided that bonuses were discretionary and the handbook was disseminated to all employees); *Ferrand v. Credit Lyonnais*, No. 02 Civ. 5191 (VM), 2003 WL 22251313, at *13-16 (S.D.N.Y. Sept. 30, 2003), *aff'd*, 110 F. App'x 160 (2d Cir. 2004) (finding the plaintiff was precluded from "raising a claim for an implied contract for a guaranteed bonus where there was

an explicit policy in the Bank's Employee Handbook setting forth a policy of discretionary bonuses" and the handbook was issued to the plaintiff upon the commencement of employment, and also dismissing the plaintiff's quantum meruit claim in light of the discretionary bonus policy); *Kaplan*, 747 N.Y.S.2d at 505-06 (dismissing claims under quantum meruit and promissory estoppel because the plaintiff had no contractual right to a bonus and the plaintiff was clearly apprised of, and acknowledged in writing that he understood, the company policy that the payment of a bonus was purely discretionary).  "New York courts have refused to permit litigants to use a quasi-contractual theory as a backdoor to enforce an unenforceable oral bonus promise." *Buckman*, 817 F. Supp. 2d at 339.

The cases upon which Dr. Antoncic relies are inapposite.  (*See* Appellant's Br. at 13-15.)  Many of the cases did not involve a written bonus policy at all.  *See Ryan v. Kellogg Partners Inst. Servs.*, 19 N.Y.3d 1, 12 (2012) (finding that the handbook at issue "[did] not say that oral compensation agreements are unenforceable, or mention bonuses at all"); *Giuntoli v. Garvin Guybutler Corp.*, 726 F. Supp. 494, 508 (S.D.N.Y. 1989) (no written bonus policy of the company).  In addition, Appellant relies on cases that address whether an employer's policies can modify an at-will employment relationship such that the employee may sue the employer for breach of contract.  In such cases, an employee must show, *inter alia*, that he "*relied*" on the employer's policies "in accepting or continuing his employment" in order for the court to find that policies created enforceable contractual obligations on which an employee—whose employment otherwise would be at-will—may base a claim for breach of contract.  *Gallagher v. Ashland Oil*, 183 A.D.2d 1033, 1034 (N.Y. App. Div. 1992) (emphasis in original); *see also Lobosco v. N.Y. Tel. Co./NYNEX*, 96 N.Y.2d 312, 317 (2001) (holding that, because a disclaimer existed in the handbook at issue making clear that employment was at-will, an employee could

16

not claim to have relied on language in the handbook purportedly limiting the employer's right to fire employees in order to assert a binding employment contract); *Smith v. New York State Elec. & Gas Corp.*, 155 A.D.2d 850, 850-51 (N.Y. App. Div. 1989) ("Because [the employee] was unaware of [the employer's] policy, it was impossible for him to come forward with proof that he relied upon it in accepting or continuing his employment. In the absence of proof of plaintiff's detrimental reliance upon defendant's severance pay policy, we have no alternative but to conclude that the contract which [employee] claims [employer] breached was not supported by consideration and is, accordingly, unenforceable as a matter of law.").

This line of cases does not work in the reverse. The employee here is not seeking to establish the *existence* of a contract formed through reliance on an employer's handbook which may modify the normal at-will employment relationship but, instead, is seeking to *change* the employer's written policies through the admission of evidence extrinsic to the policies themselves. In the latter situation, courts have held that "the non-contractual nature of a handbook does not render inapplicable" provisions in a handbook indicating that bonuses are discretionary. *See Ferrand*, 2003 WL 22251313, at *13 (finding that an employee was not entitled to an allegedly orally guaranteed bonuses where employer's non-contractual handbook stated that bonuses were discretionary); *Kaplan*, 298 A.D.2d at 111 ("Although the handbook asserted that the policies and benefits contained therein were not intended to be contractual and were subject to change at any time, this provision was plainly not intended to render the handbook wholly nugatory. Given the clearly expressed policy of the company that bonuses were to be paid solely at the company's discretion, and the provision requiring a writing executed by specified persons on the company's behalf to alter the terms of the employment

17

relationship, plaintiff has no sustainable claim that defendant company entered into an enforceable agreement entitling him to bonus compensation." (citations omitted)).

**B.      The Bankruptcy Court's Consideration of Lehman's Bonus Policy is Not Reversible Error.**

      Appellant argues that the Bankruptcy Court should not have considered Lehman's Guide, which sets forth Lehman's bonus policy, in granting the Trustee's Objection to her $3.8 million Discretionary Bonus Claim because, according to Appellant, the Trustee did not establish that the Guide is authentic and relevant.  (Appellant's Br. at 11-13.)  Appellant has not, however, come forth with anything to suggest that the bonus policy is unauthentic or irrelevant, besides her bare allegation.  A party can properly authenticate the document "if the document's form and content, taken with other circumstances, indicate that the document is reliable."  *John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000). "[C]ircumstantial evidence may serve to demonstrate a document's authenticity."  *Id.*  Here, the form and content of the Guide, including the letter preface by Dick Fuld, the CEO of LBI, indicates that it is authentic, and the Guide states on its face that it was "available electronically on LehmanLive," Lehman's intranet system.  (267th Objection, TA 1004; Ex. C, TA 1026-27.) The Guide has been admitted and relied on in numerous other contested and uncontested proceedings in the SIPA Proceeding, and the Bankruptcy Court has referred to the Guide in at least one other written decision on claims for 2008 bonuses.  *See, e.g.*, *In re LBI*, No. 08-01420 (SCC), 2015 WL 6163438, at *7, n.33 (S.D.N.Y. Bankr. Oct. 8, 2015) (in a decision rendered after a full trial held in March 2015, during which the Guide was admitted as an exhibit, citing portions of the bonus policy contained in the Guide).  Taken together with the fact that Appellant's compensation statement clearly indicates the existence of a Lehman bonus policy, there is sufficient indication that the Guide is reliable to establish its authenticity.

Moreover, Appellant did not raise any argument about a lack of foundation for the Guide or its authenticity in her Response to the 267th Objection.  If the Trustee had sufficient notice below that Appellant disputed the authenticity of the Guide, the Trustee easily could have provided a declaration sufficient to show its authenticity, such as the Declaration of Michael J. McCabe attached hereto as Exhibit A.

To the extent Appellant is arguing that the Bankruptcy Court should have converted the 267th Objection to a motion for summary judgment, rather than applying the standard for a motion to dismiss, any such error was harmless.  Appellant has not raised any genuine issue related to the Guide that could be supplemented by discovery.  *See Dixon v. Golden-Masano-Bradley Law Firm*, No. 06-3977, 228 Fed. App'x. 142, 144 (3rd Cir. Mar. 28, 2007) ("Finally, we note that Dixon argued that the promissory note attached to the Defendants' motion to dismiss was not authentic.  Assuming that the District Court should have converted Defendants' motion to dismiss into a motion for summary judgment based on this allegation, we find that such an error was harmless.  First, we note that Dixon came forward with nothing to suggest that the promissory note is unauthentic besides his bare allegation.  Second, while Dixon argued that he had over 500 pages of discovery if the motion to dismiss was converted to a motion for summary judgment, these documents purportedly related to the underlying collection practices of the Defendant, not the authenticity of the promissory note whose language formed the basis of the District Court's decision.").

## II.    The Bankruptcy Court Did Not Abuse Its Discretion In Denying Appellant Leave to Amend Her Claim More than Six Years After the Bar Date

The decision to grant or deny an amendment to a timely-filed proof of claim rests within the sound discretion of the Bankruptcy Court.  *See In re Integrated Resources, Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993).  Thus, the Bankruptcy Court's denial of Appellant's request to

amend her Claim is reviewed for abuse of discretion and should not be set aside unless "no reasonable man could agree with the bankruptcy judge's decision." *Id*. at 72; *see also Aristeia Capital, L.L.C. v. Calpine Corp. (In re Calpine Corp.)*, No. 07 Civ. 8493 (JGK), 2007 WL 4326738, at *3 (S.D.N.Y. Nov. 21, 2007).

Second Circuit law is clear that the Bankruptcy Court was well within its discretion to deny Appellant leave to amend her Claim nearly six years after the Bar Date and approximately six months after the Court's orders capping Appellant's Claim and barring further amendments. Courts in the Second Circuit apply a two-prong test to determine whether to permit a post-bar date amendment to a timely filed proof of claim. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005). The first prong asks whether there was an assertion of a similar claim or demand evidencing an intention to hold the estate liable, which is satisfied if the amendment: (1) "corrects a defect of form in the original claim"; (2) "describes the original claim with greater particularity"; or (3) "pleads a new theory of recovery on the facts set forth in the original claim." *Id*. (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)). If the "relation back" inquiry is satisfied, courts then examine the second prong: whether it would be equitable to allow the amendment. *Id.*

Here, Appellant cannot satisfy either prong of the Second Circuit's two-prong test. As there is no reference to attorneys' fees or grounds for recovery under New York Labor Law in the original Claim, Appellant fails the "relation back" prong of the Second Circuit's test.[4]

---

4. The cases cited by Appellant are readily distinguishable. In *In re Hemingway Transport, Inc.*, 954 F.2d 1, 10 (1st Cir. 1992), a timely-filed, contingent, unliquidated claim could be amended to liquidate the claimed amount once the liability became non-contingent. In quoting *Hemingway*, Appellant omitted the middle of the quoted sentence, which states that it was referring only to "amendments intended merely to *increase* the amount of a claim grounded in the same *right to payment* are not considered 'new' claims under the Code." *Id.* (emphasis in

*See In re Calpine*, 2007 WL 4326738, at *3-5 (finding that a proposed amendment did not "relate back" where the proposed amendment arose from the same Indentures as the timely-filed claims but the timely-filed claims did not mention the specific rights in question in the proposed amendment); *Meadows v. AMR Corp.*, No. 14 Civ. 8708 (PAC), 2015 WL 5893734, at *4 (S.D.N.Y. Oct. 8, 2015) (finding that proposed amendments based on statutory rights that reference matters asserted in the timely-filed claims, and that claimant asserted were a "natural off shoot" of his timely-filed claim, did not relate back).

Permitting the Attorneys' Fees Claim to be filed as a post-bar date amendment also would be inequitable where the purported amendment was first asserted nearly *six years* after passage of the Bar Date and where the Trustee has relied on the capped amount of the Claim in order to adequately reserve for claims and make distributions to the holders of allowed claims.  (*See* Unsecured Claims Reserve Order, TA 718 (ordering that "the Capped Amount for each of the unresolved Claims . . . shall be the final maximum potentially allowable unsecured amount for such Claim and no amendments increasing these potentially allowable amounts shall be allowed"); Secured and Priority Claims Reserve Order, TA 663 (ordering that "the Capped Amount for each of the unresolved Secured Claims . . . and Priority Claims . . . shall be the final maximum allowable Secured and/or Priority amount for such Claim and no amendments increasing these allowable amounts shall be allowed").)  The facts underlying the Appellant's new Attorneys' Fees Claim were known to Appellant at the time she filed her Claim.  While

---

original).  Here, Appellant failed to file a contingent, unliquidated claim—or to mention attorneys' fees or Labor Law in the Claim or the documents supporting the Claim whatsoever.  As the *Hemingway* court noted, "[t]hat the claim remained contingent, unliquidated and unmatured at the time of the filing of the chapter 11 petition *is immaterial to [claimant's] obligation to file a timely proof of claim under the Bankruptcy Code. Id.* (emphasis added).  Further, the *Hemingway* case was not decided under the Second Circuit's two pronged test. *In re Tri-State Homes, Inc.* also is distinguishable, as the original claim in that case included a copy of the promissory note containing the language creating an obligation to pay the fees in question and the claimant promptly moved for those fees.  56 B.R. 24, 27 (W.D. Wisc. 1985).  Under those circumstances, the Wisconsin Bankruptcy Court determined that it would be inequitable to deny the amendment.

other claimants properly preserved their rights by filing unliquidated claims for attorneys' fees prior to the Bar Date, Appellant failed to do so.  In fact, Appellant still failed to mention a claim for attorneys' fees during her first attempt to amend her claim to add claims for indemnification and benefits, despite already having retained counsel and filed papers in defense of her claim for bonus compensation.  Appellant has given no explanation for her dilatory behavior or justification for failing to file her new Attorneys' Fee Claim at the time the original Claim was filed or at some earlier point in the SIPA Proceeding.[5]  *See In re Integrated Resources*, 157 B.R. at 73; *Meadows*, 2015 WL 5893734, at *5 (affirming the Bankruptcy Court's finding that the proposed amendments could not be permitted based on excusable neglect where the claimant waited eight, eighteen, and twenty months after the bar date to file the proposed amendments and noting that the Second Circuit has taken a "hard line" in applying the excusable neglect standard).

Even if Appellant could satisfy the Second Circuit's test and were granted leave to amend her Claim, her Attorneys' Fees Claim would fail as a matter of law.  As Appellant has no right to payment of a discretionary bonus from LBI, there can be no colorable claim that LBI violated N.Y. Labor Law § 193.  *See* N.Y. Lab. Law § 193; *Coreth v. Barclays Capital Inc. (In re Lehman Bros. Holdings)*, 479 B.R. 268, 280 (S.D.N.Y. 2012) (rejecting claim that Barclays reduced wages in violation of New York Labor Law where there was no contractual right to payment), *aff'd*, 513 F. App'x 75 (2d Cir. 2013).  Without such a violation, Appellant cannot be entitled to attorneys' fees pursuant to Labor Law §§ 193 and 198.  *See* N.Y. Lab. Law §§ 193, 198.  Further, "[u]npaid bonuses do not constitute 'wages' under Labor Law § 193."  *Hunter v.*

---

5.   Appellant has not set forth an amount associated with new Attorneys' Fees Claim.  However, as Appellant appears to concede (Appellant's Br. at n. 7), the total amount of her Claim is capped by the Claims Reserve Orders.  (Reply, TA 1451.)

*Deutsche Bank AG, N.Y. Branch*, 866 N.Y.S.2d 670, 671 (1st Dep't 2008); *see also Giuntoli*, 726 F. Supp. at 509 ("unearned, future payments cannot be considered 'wages' under the [NY Labor Law]").

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order (i) disallowing and expunging in part and reclassifying and subordinating in part the Claim below the level of general unsecured claims, and (ii) denying Appellant's cross motion to amend, should be affirmed in its entirety.

| Dated: | New York, New York | HUGHES HUBBARD & REED LLP |
|---|---|---|
| | November 13, 2015 | |

By:  /s/  James B. Kobak, Jr.
James B. Kobak, Jr.
Meaghan C. Gragg
Karen M. Chau
One Battery Park Plaza
New York, New York 10004
Tel: (212) 837-6000
Fax: (212) 422-4726
Email: james.kobak@hugheshubbard.com

*Attorneys for Appellee James W. Giddens, as Trustee for the SIPA Liquidation of Lehman Brothers Inc.*