UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

LEHMAN BROTHERS INC.,

                        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MADELYN ANTONCIC,

                        Claimant-Appellant,

        -against-                                          15-cv-6829 (LAK)
                                                         (Bankr. SDNY
                                                 No. 08-01420 (SCC) (SIPA))
JAMES W. GIDDENS, as Trustee for the SIPA Liquidation
of Lehman Brothers Inc.,

                        Appellee.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

                Appearances:

                Lisa A. Solomon
                *Attorney for Claimant Appellant*

                James B. Kobak, Jr.
                Meaghan C. Gragg
                Karen M. Chau
                HUGHES HUBBARD & REED
                *Attorneys for Appellee*


LEWIS A. KAPLAN, *District Judge.*

            The claimant, Dr. Madelyn Antoncic, was global head of risk policy at Lehman

Brothers Inc. ("LBI"), the broker-dealer subsidiary of Lehman Brothers Holdings, Inc., and

subsequently in another senior position. She here appeals from an order of the Bankruptcy Court in the SIPA liquidation of LBI that, insofar as it remains pertinent here, (1) disallowed her claim (as a general creditor), based on an alleged oral promise, for bonus compensation for the year 2008 in the amount of roughly $3.8 million, and (2) denied her cross-motion for leave to amend her claim to assert a claim for attorneys' fees under the New York Labor Law.

*Facts*

I.  The Bonus Compensation Claim

    A.  The Procedural Context

On September 26, 2013, the Bankruptcy Court entered an Order Establishing Claims Hearing Procedures and Alternative Dispute Resolution Procedures for General Creditor Claims (the "Claims Order").[1] Exhibit 1 to the Claims Order established a procedure for contested claims which, insofar as is relevant here, provided that an early step would be a so-called Sufficiency Hearing – "a non-evidentiary hearing to address the legal sufficiency of the particular Contested Claim and whether the Contested Claim states a claim against the LBI estate under Bankruptcy Rule 7012."[2] In essence, the Claims Order established that the standard for evaluating an objection to a proof of claim during a Sufficiency Hearing would be the same as that for determining whether a complaint

---

[1] Bankr. DI 7351.

Citations to "Bankr. DI __" refer to docket items in the Bankruptcy Court below, 08-1420 (SCC) SIPA. Citations to "DI __" refer to docket items in this appeal, 15-cv-6829 (LAK). References to "TA at __" refer to page numbers in the Trustee's Appendix, available at DI 22 and its attachments.

[2] Bankr. DI 7351-1 ¶ 5a.

filed in a district court states a claim under Federal Rule of Civil Procedure ("FRCP") 12(b)(6).[3] The dispute with respect to the claimant's bonus claim was resolved as a result of a Sufficiency Hearing under the Claims Order.

---

[3] An objection to a proof of claim, unless raised in an adversary proceeding – which is not the case here – is a "contested matter" governed by Federal Rule of Bankruptcy Procedure 9014. *See In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009). Rule 9014(c) states that certain rules from Part VII of the Bankruptcy Rules apply to contested matters, but Rule 7012 – which applies FRCP 12 to adversary proceedings – is not typically one of them. Rule 9014(c) provides, however, that other civil rules apply to a contested matter if "the court [so] directs."

Here, the Claims Order in substance directed that FRCP 12 would govern non-evidentiary Sufficiency Hearings. The Claims Order defined an objection to a proof of claim as a "Contested Claim." Bankr. DI 7351-1 ¶ 3. It then instructed the Trustee to schedule a non-evidentiary Sufficiency Hearing for Contested Claims in order "to address the *legal sufficiency* of the particular Contested Claim and whether the Contested Claim *states a claim* against the LBI estate under Bankruptcy Rule 7012." *Id.* ¶ 5(a) (emphases added). The language in this section of the Claims Order thus clearly evokes FRCP 12(b)(6), under which courts evaluate the legal sufficiency of a party's pleadings and whether those pleadings "state a claim upon which relief can be granted." Further, Bankruptcy Rule 7012 applies FRCP 12(b)-(i) to adversary proceedings. Fed. R. Bankr. P. 7012(b). And, as the advisory committee notes to Bankruptcy Rule 9014 make clear, "[w]hen the rules of Part VII are applicable to a contested matter" – as Rule 7012 is here through the Claims Order – "reference in the Part VII rules to adversary proceedings is to be read as a reference to a contested matter." In these circumstances, the Court is convinced that the Claims Order overrode the default provisions of Bankruptcy Rule 9014 and applied Bankruptcy Rule 7012 (and, accordingly, FCRP 12) to the Sufficiency Hearing below.

Moreover, both parties in their briefs agree that FRCP 12(b)(6) applied to the Sufficiency Hearing. *See* DI 26 at 12; DI 27 at 10. The bankruptcy judge made clear that she evaluated the Trustee's objection to Dr. Antoncic's claim under the 12(b)(6) standard. *See* Tr. of Sufficiency Hearing at 39:20-22, TA at HHR-0001492 [DI 22-9] ("even if we assume the promise [for compensation] was made, which, for the purposes of a 12(b)(6) type motion you're entitled to that presumption"); *id.* at 54:16-19, TA at HHR-0001507 [DI 22-9] (stating that Dr. Antoncic's professed ignorance of the LBI bonus policy "is incredible and implausible, would not survive a dismissal under *Iqbal* [and] *Twombley*, can – and cannot support this claim and cannot make it out of the sufficiency hearing"). Accordingly, this Court treats the objection as having in substance been a motion to dismiss a complaint under FRCP 12(b)(6).

4

    B.  *Dr. Antoncic's Bonus Compensation Claim and the Trustee's Objection*

  On January 29, 2009, Dr. Antoncic filed a claim against the LBI estate seeking, insofar as is relevant here, payment based on a bonus allegedly promised to her in 2007 in the amount of $3.8 million. The essence of the bonus compensation claim, which Dr. Antoncic explained in greatest detail in a declaration she submitted to the Bankruptcy Court on January 5, 2015, was that Joseph Gregory, then president and chief operating officer ("COO") of LBI, in spring 2007, orally promised that Dr. Antoncic would be paid a sum in 2008 at least equal to her then current "total compensation value" of approximately $4 million.[4] This alleged guarantee was never reduced to writing.

  The Trustee initially objected to Dr. Antoncic's claim on June 20, 2013 on the basis that it was unsupported by sufficient documentation.[5] Dr. Antoncic responded on August 13, 2013,

---

[4] Dr. Antoncic Decl. in Opp'n to 267th Objection to General Creditor Claims and in Support of Cross-Motion for Leave to Amend Claim ("Dr. Antoncic Decl."), TA at HHR-00001305-06 [DI 22-8].

The difference between the $4 million "total compensation value" and the $3.8 million bonus claim reflects the fact that Dr. Antoncic's total compensation included a $200,000 base "salary," which she was paid in 2008 before Lehman's failure. *See* TA at HHR-0001325 [DI 22-8].

[5] Trustee's Eighty-Ninth Omnibus Objection to General Creditor Claims (Insufficient Documentation Claims) (the "89th Objection"), Bankr. DI 6570, Ex. A ¶ 1.

explaining that Mr. Gregory had promised her approximately $4 million in compensation for 2008.[6] She attached to the response several emails that she said supported her claim.[7] The emails, all of which were sent in mid- to late 2008, generally show that Dr. Antoncic believed Mr. Gregory's oral guarantee of compensation was binding, but that she was concerned about the lack of a written guarantee given LBI's uncertain state and was considering whether to request a written guarantee.[8] On the advice of Thomas Russo, vice-chairman and general counsel of LBI, Dr. Antoncic emailed Mr. Gregory seeking his advice.[9] As far as the record shows, Mr. Gregory never responded. Dr. Antoncic attached also to her response her 2007 total compensation statement as evidence of her "2007 Total Compensation Value."[10]

On August 15, 2013, the Trustee withdrew his initial objection to Dr. Antoncic's claim because the claim, in his words, then "include[d] sufficient documentation to enable the

---

[6] Dr. Antoncic's Resp. to 89th Objection, TA at HHR-0001373-74 [DI 22-8].

This document actually is styled as a response to "Debtor's 86th Omnibus Objection to General Creditor Claims," but that appears to be a typographical error.

[7] *Id.*, TA at HHR-0001379-87 [DI 22-8].

[8] *Id.*

[9] *Id.*, TA at HHR-0001382 (Correspondence 5) [DI 22-8].

[10] *Id.*, TA at HHR-0001373-74, HHR-0001388 [DI 22-8].

6

Trustee to assess [its] validity."[11]  The Trustee "reserve[d] his right to object to the claims . . . on any grounds in the future."[12]

On October 7, 2014, the Trustee again objected to Dr. Antoncic's claim in his Two Hundred Sixty Seventh Omnibus Objection to General Creditor Claims (Employee Claims) (the "267th Objection"), stating:[13]

> While the claimant asserts that she is entitled to a bonus based on an oral representation, Lehman's bonus policy, as laid out in the Guide to Working at Lehman Brothers . . . states that "[b]onuses are not guaranteed unless otherwise agreed upon in writing, and are determined at the full discretion of senior firm management."  The Discretionary Bonus Claim does not present any evidence that any bonus was agreed upon in writing or that any bonus actually was awarded or required.

He attached as Exhibit C to the objection a document entitled Guide to Working at Lehman Brothers (the "Employee Guide" or "Guide"), which includes the above-quoted passage.[14]  The document, however, even assuming it is a Lehman document, contains no date or other information indicating when it purportedly was written or effective.  Nor did the Trustee ever explain the circumstances in which he located the Employee Guide or otherwise attempt to authenticate it.  He submitted, for example, no declaration or other evidence of its authenticity, accuracy, completeness, or effective date.  He provided no information, let alone evidence, concerning whether, when or in what manner the Employee Guide (assuming *arguendo* its authenticity) was distributed to employees.

---

[11] Bankr. DI 7033 at 1 & Ex. A.

[12] *Id.*

[13] 267th Objection ¶ 25, TA at HHR-0001004 [DI 22-5].

[14] *Id.* at Ex. C, TA at HHR-0001026-68 [DI 22-5].

7

Dr. Antoncic filed a response on January 5, 2015, in which she swore, under penalty of perjury, that:[15]

> From the time I joined Lehman in July 1999, I was not aware of a Firm policy requiring that once an employee had been hired any future guaranteed bonuses were required to be in writing. In fact, it was my understanding of the custom at Lehman for bonus guarantees to be done on a handshake. If I had known of a policy requiring a writing, I would have made sure Joseph Gregory reduced the promise for my Guaranteed Comp to writing.

She contended also, albeit in somewhat conclusory terms, that the Trustee had produced "no evidence" of a policy that bonuses must be guaranteed in writing.[16]

The Trustee filed a reply on June 2, 2015. He there argued primarily that (1) the bonus policy in the Employee Guide required bonus guarantees to be in writing, and (2) the claimant knew or should have known about the bonus policy because (a) the Guide was available electronically on LBI's "LehmanLive" intranet, and (b) Dr. Antoncic's 2007 total compensation statement included a note that "Your rights to the bonus payment and equity awards are subject to the terms and conditions of the Firm's bonus policy."[17]

The Bankruptcy Court held its Sufficiency Hearing on June 29, 2015.[18] Dr. Antoncic's counsel then raised the authenticity and relevance issues with respect to the Employee

---

[15] Dr. Antoncic Decl. ¶ 6, TA at HHR-0001306 [DI 22-8].

[16] Dr. Antoncic's Resp. to 267th Objection, TA at HHR-0001295 [DI 22-8].

[17] Trustee's Reply to Dr. Antoncic's Resp. to 267th Objection ("Trustee's Reply"), TA at HHR-0001443-46 [DI 22-9].

[18] Tr. of Sufficiency Hearing, TA at HHR-0001454-1524 [DI 22-9].

8

Guide more directly.[19] The court, however, rejected those arguments, and rejected also the argument that Dr. Antoncic never had received and was unaware of the bonus policy within the Employee Guide, saying:[20]

> I think that the notion that your client would credibly testify that, as a result of [the reference to the "Firm's bonus policy" in the 2007 total compensation statement], or as a result of the eight years that she worked as one of the most senior people in a global position at Lehman Brothers was unaware that there were written policies that governed her employment is incredible and implausible, would not survive a dismissal under *Iqbal v. Twombley*, can – and cannot support this claim and cannot make it out of the sufficiency hearing.

The court issued a written order on July 15, 2015 adopting its oral decision.[21]

II.     *Leave to Amend to Add a Claim for Attorneys' Fees*

Dr. Antoncic's claim No. 7000706, which included the bonus compensation claim at issue here (along with a claim for restricted stock units that is not part of this appeal), was filed on January 29, 2009.[22] It did not mention attorneys' fees. The bar date for "all claims" was June 1, 2009.[23]

---

19
   Tr. of Sufficiency Hearing, at 49:15-17, TA at HHR-0001502 [DI 22-9] ("The guide that they have attached to their papers is undated. What year is it? Is it 2007? Is it 2002? Is it 2008? It's undated, no affidavit.").

20
   *Id.* at 54:11-19, TA at HHR-0001507 [DI 22-9].

21
   Supplemental Order Granting 267th Objection, TA at HHR-0001525-29 [DI 22-9].

22
   *See* Dr. Antoncic Decl. ¶ 11 & Ex. C, TA at HHR-0001308 [DI 22-8].

23
   Order Approving Form and Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Other Creditors; and Fixing Interim Reporting Pursuant to SIPA, at 4, TA at HHR-0000015 [DI 22].

9

On January 5, 2015, as part of her response to the 267th Objection, Dr. Antoncic sought leave to amend her claim to seek attorneys' fees.[24] She argued that the bonus compensation claim in substance is one for unpaid "wages" under New York Labor Law Sections 190(1) and 193(1) and that she therefore would be entitled, if she prevails on that claim, "to collect attorneys' fees and costs incurred in enforcing any court judgment" pursuant to New York Labor Law § 198(4).

The Trustee argued in his reply brief in the Bankruptcy Court that Dr. Antoncic's motion for leave to amend should be denied because the attorney's fee claim (1) ran afoul of the court's orders barring amendments that would increase the capped amount for unresolved claims, (2) was "new and different" from her original claim, (3) was inexcusably late, and (4) was meritless in any case.[25]

The motion for leave to amend was addressed only briefly by the bankruptcy judge during the Sufficiency Hearing. After a lengthy colloquy about the bonus compensation claim, the judge said that "[t]he other claims are, as the Trustee indicated – they're time-barred. And even if they weren't time-barred, there are independent bases for not allowing those claims."[26] The court's written order confirmed the denial of the claimant's motion for leave to amend.[27] This appeal followed.

---

[24] See Dr. Antoncic's Resp. to 267th Objection at 14-15, TA at HHR-0001301-02 [DI 22-8].

[25] Trustee's Reply at 14-16, TA at HHR-0001451-53 [DI 22-9].

[26] Tr. of Sufficiency Hearing at 54:20-22, TA at HHR-0001507 [DI 22-9].

[27] Supplemental Order Granting 267th Objection at 3, TA at HHR-0001527 [DI 22-9].

*Discussion*

I.      The Bonus Compensation Claim

      A.      Standard Of Review

This appeal arises in a context analogous to the dismissal of a complaint under FRCP 12(b)(6).[28] This Court, sitting as an appellate court, "review[s] such a decision *de novo*" and "must accept as true all of the factual allegations set out in the [claimant's claim], draw inferences from those allegations in the light most favorable to the [claimant], and construe the [claim] liberally."[29]

      B.      The Authenticity and Relevance of the Employee Guide

Dr. Antoncic contends that LBI's president and COO orally promised that she would be paid at least $4,007,143 in 2008 – of which only $200,000 was paid – and that oral guarantees for compensation were routine at LBI during that time. There is nothing inherently incredible about that claim, and the Court accepts it as true for the purposes of this appeal.

The Trustee argues that even if Dr. Antoncic received the oral guarantee she claims, it would not bind the estate because "'courts have repeatedly held that a written policy clearly stating that bonus compensation is discretionary bars breach of contract claims based on oral bonus promises.'"[30] And indeed, the purported Employee Guide that the Trustee attached to his 267th Objection clearly states that "[b]onuses are not guaranteed unless otherwise agreed upon in writing,

---

[28] *See* Bankr. DI 7351-1 ¶ 5a; Fed. R. Bankr. P. 7012(b).

[29] *Roth v. Jennings*, 489 F.3d 499, 509-10 (2d Cir. 2007) (citations and quotation marks omitted).

[30] Appellee's Br., DI 26 at 13 (quoting *Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 517 (S.D.N.Y. 2012) (alterations and quotation marks omitted)).

11

and are determined at the full discretion of senior firm management." The problem for the Trustee, however, is that there is no way to tell from the record whether the purported Employee Guide attached to its objection is authentic or, if it was, when it was in effect.

As an initial point, a court considering a motion to dismiss under FRCP 12(b)(6) typically is confined to the four corners of the complaint, including any documents attached to and incorporated in it. It may not properly go beyond those materials to consider other documents unless those additional documents are incorporated by reference, relied upon in, or integral to the complaint.[31]

None of these exceptions appears to apply to the purported Employee Guide, which was put forward by the trustee (not the claimant) during a "non-evidentiary" Sufficiency Hearing governed by the same standards as a FRCP 12(b)(6) motion in a district court. To the extent the Bankruptcy Court did consider this document – and the record suggests that it did[32] – it effectively converted the Trustee's objection into a motion for summary judgment.[33] But a court may not convert a 12(b)(6) motion into one for summary judgment and consider matters outside the pleadings without giving notice to the non-moving party before the conversion and affording that

---

[31] *See Roth*, 489 F.3d at 509.

[32] *See, e.g.*, Tr. of Sufficiency Hearing at 40:16-18, TA at HHR-0001493 ("But, under New York law, and based on documents that have been submitted by the Trustee, the written documents have to prevail.") [DI 22-9].

[33] *See* FRCP 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

party "'a reasonable opportunity to meet facts outside the pleadings.'"[34]  Here, to the extent the proceedings below were converted into a motion for summary judgment, the claimant was deprived of the opportunity fully to contest the Trustee's evidence with additional evidence and to apply for discovery under FRCP 56(d) in order to challenge the authenticity and relevance of the Employee Guide.

Even if consideration of the purported Employee Guide had been appropriate in the procedural context in which it was advanced by the Trustee, there remains the fact that the Trustee made no effort to authenticate it.  There is nothing in the record to substantiate the Trustee's implicit claim that the document he put forward was authentic, accurate, or complete in the respects material to the matter before the court.  There is, for that matter, no indication of how the Trustee obtained the document.  So the Trustee now attempts to rectify that failure on appeal.

First, he attempts to plug the hole by attaching to his brief before this Court a declaration that seeks to establish authenticity and relevance.  But, as he implicitly concedes in his brief,[35] "'if an item was not considered by the [bankruptcy] court, it should be stricken from the record on appeal.'"[36] And while it perhaps might be tempting to accept this inappropriate appellate submission on the ground that it could offer a "practical" way to resolve the issue without a remand,

---

[34] *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985)).

[35] *See* Appellee's Br., DI 26 at 2 ("By a declaration, such as that of Michael J. McCabe attached hereto as <u>Exhibit A</u>, the Trustee could easily have addressed this argument [below] if necessary if it were raised in a timely and appropriate manner.") (underscore in original).

[36] *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (S.D.N.Y. 2008) (quoting *In re Food Fair, Inc.*, 15 B.R. 569 (Bankr. S.D.N.Y. 1981)); *see* Fed. R. Bankr. P. 8009.

the Court declines to do so. The claimant – assuming for the sake of argument that this evidence outside the claim (analogous to a complaint given the Claims Order) and matters it incorporated or relied upon were appropriately considered at a non-evidentiary Sufficiency Hearing, which they were not – would have been entitled to an opportunity to attempt to challenge the declaration, argue for a deposition of the declarant, and possibly even seek discovery. Accordingly, given the framework the Bankruptcy Court established for testing the sufficiency of claims and this Court's function here as an appellate rather than a first instance court, this Court declines to consider the declaration.

The Trustee next argues that Dr. Antoncic's authenticity and relevance arguments were forfeited because she did not raise the authenticity issue until oral argument, thus depriving him of an opportunity to address the issue before the Bankruptcy Court. But that is not quite accurate. The Trustee did put the purported Employee Guide forward in his 267th Objection. Dr. Antoncic's response, however, was that the Trustee had put forward "no evidence" of any policy that bonus guarantees had to be in writing and that she had never been aware of any such thing during her years at Lehman. That, in this Court's view, probably would have been sufficient to raise the point even if the matter had not been raised quite specifically at the oral argument. So if the Trustee had wished to submit evidence countering Dr. Antoncic's argument, he should have done so in his reply to Dr. Antoncic's response to his objection and, in any case, he should have sought leave from the Bankruptcy Court at the oral hearing. This Court rejects his contention that Dr. Antoncic forfeited the issue below.

Doubtless understanding the position in which he now finds himself, the Trustee contends also that the Employee Guide is self-authenticating based on its "form and content . . .

including the letter preface by Dick Fuld, the CEO of LBI."[37]  The Court agrees that the purported Employee Guide has some indicia consistent with it being authentic.  It purports to be prefaced by a message from the company's chief executive officer.  It contains various sections one would expect in an Employee Guide (*e.g.*, Equal Employment Opportunity, Hours and Compensation, Sexual Harassment, Dress Code, Programs and Services, ERISA rights, etc.).  It has the general look and feel of an employee handbook.  On the other hand, the Guide is undated, unpaginated, and contains no signature.  It contains nothing to indicate how the Trustee came to have the document.  Ultimately, however, the Court need not determine whether the Employee Guide was self-authenticating because, even assuming it was, the Trustee has failed to demonstrate its relevance.

As previously noted, the Employee Guide is undated.  It contains nothing that indicates the date on which it became effective.  It may have been effective when the claimant received her oral guarantee in spring 2007.  But it may have gone into effect after Dr. Antoncic received her oral guarantee or it may have been modified or changed before she received her oral guarantee.  At this time, the Court can only guess.

To be sure, the Court is not suggesting any dishonesty or impropriety on the part of the Trustee.  It is entirely possible, perhaps even likely, that the Trustee may be able to prove the relevance and authenticity of the Employee Guide on a fuller record before the Bankruptcy Court.  But that is not now an issue for this Court, which is bound by the record on appeal.

---

[37] Appellee's Br., DI 26 at 18.

C.     The Dissemination of the Employee Guide

The claimant argues also that she would not have been bound by the Employee Guide's bonus policy, even if the Employee Guide were in effect when she received her oral guarantee for 2008 compensation, because she never received the Guide and was unaware of the alleged policy.

The bankruptcy judge found the claimant's assertion on this point inherently incredible. This Court respectfully disagrees. There is nothing in the record describing the manner in which employees received or were notified about the Employee Guide or even suggesting that it was standard business practice at LBI to disseminate the Guide to employees. Nor is there anything in the record suggesting that Dr. Antoncic ever received the Guide, was notified of its existence, or told where to find it. For her part, Dr. Antoncic has argued consistently that she was unaware of the Guide and its bonus policy.[38] Thus, the Court accepts as true for present purposes the claimant's contentions that she never received the Guide and was unaware of the policy.

The Trustee offers two arguments in response that purport to demonstrate that the claimant had actual notice of the bonus policy in the Employee Guide. First, the Trustee asserts that the Employee Guide was available electronically on the company's "LehmanLive" intranet system. He appears to argue – although the point is not made explicitly – that the mere availability of the Guide on the LBI intranet provided sufficient notice to employees for their employment to be governed by its terms.

---

[38] *E.g.*, Dr. Antoncic's Resp. to the 267th Objection ¶ 6, TA at HHR-0001306 [DI 22-8]; Tr. of Sufficiency Hearing at 42:8-24, 43:13-24, TA at HHR-0001495-96 [DI 22-9].

As a threshold point, the only evidence that the Guide was available on LehmanLive is a statement found in the Guide itself[39] which, as discussed above, was not properly part of the record for the Sufficiency Hearing. In any event, the Trustee's position is wrong as a matter of law. Assuming, hypothetically, that the Guide was posted somewhere on the LehmanLive system, but that LBI took no further action to distribute the Guide to its employees, notify employees of its existence, or direct employees to its location on the intranet, it would be fundamentally unfair to expect employees to be aware of the Guide and be bound by its policies. Indeed, in the cases the Trustee cites, the courts held that discretionary bonus policies in employee handbooks overrode guarantees for bonus compensation only when those handbooks were disseminated directly to employees.[40] This Court expresses no opinion about what would constitute sufficient notice to employees to render the bonus compensation policy here enforceable except to say that the inclusion of the policy in an Employee Guide that was never disseminated to employees in any way would render the policy unenforceable.

---

[39] *See* Trustee's Reply ¶ 14, TA at HHR-0001443 [DI 22-9].

[40] *E.g.*, *Cancro v. Credit Agricole Indosuez Severance Pay Program*, No. 05-cv-2023 (RJS), 2009 WL 8573475, at *5, 8-9 (S.D.N.Y. Apr. 15, 2009) (dismissing bonus compensation claim based on oral promise in light of provision in employee handbook stating that employer retains full discretion over bonus payments, when the handbook was disseminated to all employees shortly after beginning employment, and when plaintiff acknowledged that he was aware of the discretionary bonus provision in the handbook); *Ferrand v. Credit Lyonnais*, No. 02-cv-5191 (VM), 2003 WL 22251313, at *12-13 (S.D.N.Y. Sept. 30, 2003), *aff'd*, 110 F. App'x 160 (2d Cir. 2004) (dismissing "claim for an implied contract for a guaranteed bonus where there was an explicit policy in the Bank's Employee Handbook setting forth a policy of discretionary bonuses," when plaintiff was given the handbook when she was hired); *Kaplan v. Capital Co. Of Am. LLC*, 298 A.D.2d 110, 111, 747 N.Y.S.2d 504, 505-06 (1st Dep't 2002) (dismissing breach of contract claim based on unpaid bonus because "bonus compensation sought was clearly stated in the company handbook to be purely discretionary," and plaintiff had "acknowledged in writing that he understood the company policy" on discretionary bonuses); *see* Appellee's Br., DI 26 at 15-16.

Finally, the Trustee argues that the claimant had actual notice of the bonus compensation policy in the Employee Guide because Dr. Antoncic's 2007 total compensation statement – which Dr. Antoncic herself entered into the record – states near the bottom that "[y]our rights to the bonus payment and equity awards are subject to the terms and conditions of the Firm's bonus policy and the controlling equity award documents, as applicable."[41] But this single statement, even assuming *arguendo* its authenticity and relevance, would have been insufficient to notify employees about the bonus policy in the Employee Guide without additional context. An employee might reasonably conclude, for example, that this statement refers to a policy that bonuses are contingent on the employee remaining employed through the bonus distribution date. Indeed, Dr. Antoncic's total compensation statements from 2001 through 2006 do not contain the "Firm's bonus policy" statement quoted above, but instead state in the same location on the document that "[t]he above bonus (including equity awards and any special awards) is contingent on your remaining actively employed through the scheduled bonus award date."[42] In any event, the 2007 total compensation statement does not tell employees where to find the "Firm's bonus policy."

In the last analysis, the Court holds that the Bankruptcy Court erred in dismissing Dr. Antoncic's bonus compensation claim for insufficiency given what was properly before it.

---

[41] *See* Dr. Antoncic Decl. at Ex. B, TA at HHR-0001316 [DI 22-8].

[42] Dr. Antoncic's Resp. to the 89th Objection, Ex. A, TA at HHR-0001077-83 [DI 22-6].

2.     *The Motion for Leave to Amend*

      *A.     Standard Of Review*

A Bankruptcy Court's denial of leave to amend a claim is reviewed for abuse of discretion.[43] It "exceeds its allowable discretion where its decision (1) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding."[44]

      *B.     Analysis*

The Second Circuit has established the following framework for determining whether to allow an untimely amendment to a timely-filed bankruptcy claim:[45]

> First, they examine whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable. An amendment will meet this threshold if it 1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim. Second, if an amendment does, in fact, "relate back" to the timely filed claim, courts will examine each fact within the case and determine whether it would be equitable to allow the amendment. Multiple factors play a role in this analysis, including whether the debtor, or other creditors, would be unduly prejudiced by the amendment, or whether, instead, other creditors would "receive a windfall" from the disallowance of the amendment, and whether the late claimant acted in good faith and the delay was justified. Of these, however, the critical consideration is whether the opposing party will be unduly prejudiced by the amendment.

---

[43] *In re Calpine Corp.*, 406 B.R. 463, 472 (S.D.N.Y. 2009).

[44] *In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007) (quotation marks and alterations omitted).

[45] *In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005) (quotations marks, alterations, and citations omitted); *see also* Fed. R. Bankr. P. 7015 (stating that FRCP 15, which governs amended pleadings, "applies in adversary proceedings").

As to the first prong, the claimant does not argue that the proposed amendment to include a claim for attorneys' fees would cure a defect in the original claim or describe it in greater detail. Dr. Antoncic argues only that the proposed amendment is "grounded in the same right to payment" as the existing bonus compensation claim.[46]

The Court is not sure how the claimant's alleged right to her 2008 bonus compensation and alleged right to reimbursement of attorneys' fees under New York Labor Law are "grounded in the same right to payment," but nonetheless acknowledges that the two claims arise out of the same events – the alleged oral promise concerning the claimant's 2008 compensation and the subsequent failure to pay claimant that compensation. The case law, however, tends to show that "what matters is whether the original claim referenced or put debtors on notice of the late-filed claims."[47] Here, the Bankruptcy Court did not abuse its discretion in finding that Dr. Antoncic's original claim for unpaid compensation and restricted stock units did not provide debtors with reasonable notice that the claimant would seek also attorneys' fees, even if the basis for that claim is the same alleged oral promise underlying the original claim.

The claimant does not even address the equity prong in her brief, and the Court will not belabor the point here. Suffice it to say that the claimant offered no explanation, before either the Bankruptcy Court or this Court, for why she waited until six years after the bar date to add the

---

[46] Appellant's Br., DI 27 at 17.

[47] *Meadows v. AMR Corp.*, 539 B.R. 246, 252 (S.D.N.Y. 2015); *see In re Calpine Corp.*, No. 07-cv-8493 (JGK), 2007 WL 4326738, at *4-5 (S.D.N.Y. Nov. 21, 2007) ("The fact that the New Claims arise out of the same Indentures is not sufficient to establish relation back because the Original Claims did not provide the Debtors with reasonable notice of the proposed amendment.").

attorneys' fees claim.  In these circumstances, the bankruptcy judge did not abuse her discretion in denying leave to amend.

Finally, the Court notes that the attorneys' fees claim, if permitted, likely would fail on the merits, as the First Department has held that "[u]npaid bonuses do not constitute 'wages' under Labor Law § 193, plaintiffs' 'commission' nomenclature notwithstanding."[48]  Here, despite the claimant's insistence that her claim for $3.8 million is a "deferred compensation" claim, her total compensation statements from prior years clearly indicate that the majority of the unpaid portion of her 2008 compensation was a "bonus."[49]

*Conclusion*

The Bankruptcy Court's order disallowing and expunging the claimant's "Discretionary Bonus Claim" is vacated and remanded for further proceedings consistent with this opinion.  The Bankruptcy Court's order denying the claimant's motion for leave to amend her general creditor claim to add a claim for attorneys' fees is affirmed.

SO ORDERED.

Dated:        January 26, 2016

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[48] *Hunter v. Deutsche Bank AG, N.Y. Branch*, 56 A.D.3d 274, 274, 866 N.Y.S.2d 670, 671 (1st Dep't 2008).

[49] Dr. Antoncic's $4,007,143 total compensation value in 2007 included three components: (1) a $200,000 "paid salary," which she admits to receiving in 2008 and does not seek here, (2) a $3,100,000 "bonus," and (3) $707,143 in discount portions of her equity award. *See* Dr. Antoncic's Resp. to 89th Objection, Ex. A, TA at HHR-0001077 [DI 22-6].